FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2018 NOV -7 PM 3: 42

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LAWRENCE MILLS,

   v.

ANTHONY HASSAN, et al

   Defendants.

Civil Action No. 18-MJG-0562

## PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

COMES NOW, Plaintiff, Lawrence Mills, and files this opposition to Defendants' Anthony Hassan, James Lantz and Matthew Dull, individually and in their official capacity as Maryland State Troopers (herein collectively "Officers"), and Defendants, the State of Maryland ("the State") and Maryland State Police ("MSP"), Motion to Dismiss, or in the alternative, Motion for Summary Judgment, and in support thereof states as follows:

## I.  TABLE OF CONTENTS

II.  **INTRODUCTION** ................................................................. 2

III. **FACTUAL ALLEGATIONS AND DISPUTED FACTS** ........................... 3

IV. **FACTS NOT GENUINELY DISPUTE** ....................................... 3

V.  **LEGAL BACKGROUND** ..................................................... 10

 A. Dismissal ................................................................. 10

 B. Summary Judgment ....................................................... 11

VI. **ARGUMENT** ............................................................. 12

 A. Heck v. Humphrey Does Not Preclude any of Mills' Claims ................. 13

 B. Plaintiff Is Entitled to Conduct Discovery Before the Court Considers Summary Judgment ................................................................. 16

    C.   Principles of Res Judicata and Collateral Estoppel DO NOT Bar Plaintiff's Claims Because of the Different Burdens of Proof and the Distinct Issues in the Civil Proceeding...................................................................................................................................17

    D.   Defendants Are Proper Parties to The Action Because §1983 Provides a Right of Action for Individuals To Sue Any Government Official In His or Her Official Capacity....................................................................................................................................20

**VII. Defendants Are Proper Parties to The Action Because §1983 Provides a Right of Action for Individuals To Sue Any Government Official In His or Her Official Capacity** ................................................................................................................................... 20

**VIII. Plaintiff States a Claim for Bystander Liability Against Lantz and Dull** ............ 21

**IX. Plaintiff's Constitutional Claims Have Merit**.................................................................. 23

**X. Plaintiff's State Claims Have Merit**...................................................................................... 24

**XI. None of the Defendants Are Protected By Immunity**........................................... 30

**XII. A Reasonable Jury Is Likely To Believe Plaintiff's Version of Events** ................... 34

**XIII. Conclusion** ............................................................................................................................ 35

## II.    INTRODUCTION

This case arises as a result of the illegal stop, arrest and wrongful prosecution of

Plaintiff, Lawrence Mills ("Mills"), that occurred on March 13, 2015, when he was pulled

over by Defendant Anthony Hassan ("Hassan") for an alleged traffic violation without

probable cause. As more thoroughly detailed in Plaintiff's Complaint, Hassan negligently

performed his duties by requesting Mills to exit his vehicle, perform field sobriety tests, deny

his right to counsel prior to taking the breathalyzer test and writing false information in

Mills' charging documents. Following the illegal stop, Defendants James Lantz ("Lantz") and

Matthew Dull ("Dull"), acted in concert with Hassan (collectively "Officers"), individually

and in their official capacity as Maryland State Troopers, along with Defendants, the State of

Maryland ("State") and Defendant Maryland State Police ("MSP") to further deprive Mills of

his rights. As the result of the Defendants' deliberate actions and inactions in this case,

violated Mills rights, as clearly established in the presented facts and in Mills' Complaint. Officers like Hassan who commit perjury and otherwise fabricate evidence "threaten the *integrity of the* judicial process by injecting it with falsity provided by officers of the state whose official status gives the misinformation a special aura of reliability." *Morse v. Fusto*, 804 F.3d 538, 548-49 (2d Cir. 2015).

For the reasons discussed below, Defendants' motion to dismiss, or in the alternative, motion for summary judgment, should be denied.

## III. FACTUAL ALLEGATIONS AND DISPUTED FACTS

On March 13th, 2015, Mills was on his way home from the Horseshoe Casino in Baltimore where he did not consume any alcohol. Compl., ¶ 18 and 19. As Mills was traveling southbound on I95, without committing any traffic infractions, Hassan initiated a traffic stop without probable cause. Id. at ¶ 19. Despite Mills denying any alcohol consumption, Hassan ordered Mills out of the car. Id. at ¶ 19. Hassan then directed Mills to perform field sobriety tests, which Mills declined to perform due to the illegal stop. Id. at ¶ 20. Hassan became agitated and grabbed Mills yelling, "You don't want to do this? Then I'm going to take you to jail!" Id. at ¶ 20. Hassan grabbed Mills by his left arm and began taking Mills forcefully toward his cruiser. Id. at ¶ 20.

While still holding Mills' left arm, Hassan took Mills back to the trunk of his vehicle and attempted to perform additional field sobriety tests. Id. at ¶ 21. Mills again declined to perform any tests and Hassan again grabbed Mills while repeatedly yelling, "I'm going to take you to jail!" Id. at ¶ 21. Hassan then walked to Mills' vehicle and began searching it, without probable cause. Id. at ¶ 22. Mills stood alone next to Hassan's police cruiser while

3

Hassan searched Mills' vehicle before MSP Troopers Lantz and Dull arrived and communicated with Hassan. Id. at ¶ 22. Hassan was still in the process of illegally searching Mills' vehicle when Lantz and Dull communicated with Hassan. Id. at ¶ 22. Mills began speaking with Lantz and Dull and explained the events that transpired with Hassan, but neither Defendant attempted to stop the illegal search. Id. at ¶ 23. Hassan then physically grabbed Mills from behind, placed him in handcuffs, and took Mills by force to his cruiser while yelling; "I'm going to take you to jail!" Id. at ¶ 23. Hassan pushed Mills onto the trunk of his vehicle and searched him, then placed Mills in his police cruiser. Id. at ¶ 24. At all times described above, Dull and Lantz failed to stop Hassan's illegal conduct and participated in the arrest. Id. at ¶ 23.

Hassan drove Mills to the MSP Waterloo Barracks to complete the arrest. Id. at ¶ 25. Upon arriving at the barracks, Hassan read Mills the DR-15 advise of rights, and upon Hassan completing the DR-15, he asked if Mills would submit to the breath test. Id. at ¶ 25. Mills requested that he be allowed to communicate with an attorney before making the decision. Id. at ¶ 25. Hassan then said, "It's a refusal," and Hassan signed the DR-15 in the refusal section. Id. at ¶ 25. Hassan then charged Mills with Driving Under the Influence of Alcohol. Id. at ¶ 26. Hassan attempted to detain Mills further, but another Trooper, Sgt. Nuzzo, instructed Hassan to "Just let him call someone to pick him up." Id. at ¶ 26. Hassan repeatedly insisted that he wanted to take Mills to jail, but Nuzzo repeated his decision to Hassan to let Mills call someone. Id. at ¶ 26. Hassan then walked over to Mills and said, "I have good news, I decided to let you call someone." Id. at ¶ 26.

Hassan then wrote a falsified police report containing multiple fabrications regarding

4

his alleged observations of Mills, pre-arrest. Id. at ¶ 28. In his report Hassan falsely alleged that he "observed the gray Jaguar swerving back to back" and traveling halfway on the shoulder, which he claimed was probable cause for the stop, but this had never been mentioned at any time during the stop. Application for Statement of Charges. Hassan also included typical textbook observations that officers are trained to observe during DUI stops, but none were observed or reported by other officers or witnesses to this event. Id. at ¶ 34. Hassan failed to include the identity of Lantz, Dull and Sgt. Nuzzo in his report thereby attempting to deprive Mills of learning who participated in the arrest and observed Mills' condition before and after the arrest. Id. at ¶ 34.

In the report and application for charges, Hassan also claimed Mills failed various field sobriety tests that were never even performed. Id. at ¶ 28. In the section of the report titled "ARREST" in an effort to justify his arrest of Mills, Hassan falsely and maliciously alleged that he observed a

Strong odor of an alcoholic beverage [...] Eyes glassy and bloodshot with a gazed look [...] My observed signs of impairment as Mills was stepping out of his vehicle, he was swaying, stumbling and was unable to keep his balance.

Hassan submitted his falsified report for transmission to the Howard County State's Attorney's Office with intent to deceive and defraud, and for the purpose of instigating the criminal prosecution of Mills for a crime he did not commit. Id. at ¶ 30. The State pursued criminal charges against Mills. Id. at ¶31. None of the Troopers present the night of the incident, including Sgt. Mitchell Nuzzo, Lantz and Dull, were willing to corroborate Hassan's fabricated observations of impairment attributed to Mills. Id. at ¶31.

Mills was tried in the District Court for a DUI and other related traffic offenses.

5

Id. Hassan made contradictory material declarations[1] at Mills' District and Circuit Court trials as well as the MVA hearing. At the District Court Hearing that ended with Mills being convicted and sentenced to a jail term for the charge of driving under the influence of alcohol, Hassan swore that Mills was unable to stand of his own accord at all times; at the traffic stop, at the Waterloo Barracks and even swore that he had to **support Mills as he left the Barracks following the arrival of Garcia**. (online audio/video 0:00 – 0:07, Appendix 2). Hassan made contradictory declarations regarding this material fact when he testified at Mills MVA Hearing that **when Garcia arrived to pick Mills up**, Mills "**walked on his own, he was able to walk on his own**" (online audio/video 0:19 – 00:45, Appendix 2). Hassan's undisputed testimony as delineated in this paragraph constitutes perjury as a matter of law under Maryland Criminal Law Article § 9-101(c)(*See i.e.* Appendix 1). *See also* 18 U.S. Code § 1623(c) (Criminalizing making "two or more declarations, which are inconsistent to the degree that one of them is necessarily false" before a Grand Jury or Court of the United States).

At Mills' Jury Trial, Hassan swore that **Mills collapsed**. (online audio/video 1:20 – 1:43, Appendix 2) Hassan made a contradictory declaration of material fact when he testified at Mills' MVA hearing that Mills "**didn't fall down**." (online audio/video 1:44 – 1:59, Appendix 2). Hassan's undisputed testimony as delineated in this paragraph constitutes perjury as a matter of law under Maryland Criminal Law Article § 9-101(c)(*See i.e.* Appendix

---

[1] Also extant, and authenticated in the Plaintiff's declaration attached hereto ("Plaintiff's Declaration") (Page 43), is the same audio lodged with the court proximate to filing this brief (as the "lodged audio") available to all parties online at <**https://youtu.be/YOS8WOnrUyI**> (viewed 10/31/18) (hereafter referred to as "online audio/video.")

Hassan deliberately fabricated material facts to the Court, all of Hassan's observations of Plaintiff appearing impaired by alcohol, were contrived and absolutely false. Id. at ¶ 32. Relying entirely on Hassan's false statements, Mills was found guilty of DUI and other charges, received a sentence of 2 years and 60 days to the Department of Corrections, with 2 years suspended and set Mills' appeal bond at $100,000. Id. at ¶ 35. As a result of the Defendants' conduct, Mills spent a significant amount of money to defend against the allegations of the Defendants. Id. at ¶44.

## IV.    FACTS NOT SUBJECT TO A GENUINE DISPUTE

Anthony Hassan arrested and seized Mills on March 13, 2015 and charged him with driving under the influence of alcohol, driving while impaired by alcohol, and reckless driving. All three of the charges were terminated in Mills' favor when a Howard County Jury found him "Not Guilty" of these offenses.

Hassan made Contradictory Material Declarations in his Police Report regarding Mills performance on the Standardized Field Sobriety Tests, swearing that he observed every cue of intoxication

"[HGN] (6 of 6 Cues Observed [...] WALK AND TURN (8/8 Cues Observed) [...] ONE LEG STAND (4/4 Cues Observed) Right foot raised" (Defendant's Exhibit 2, Page 2) even specifying that Mills displayed "Distinct and Sustained Nystagmus at Maximum Deviation – Present in both eyes [...] Onset of Nystagmus Prior to 45 Degrees – Present in both eyes"

Hassan's sworn statements meticulously detailing how Mills displayed every cue of intoxication on the SFST are *contradictio in adjecto* to his oath that Plaintiff declined all SFST.

A). *See also* 18 U.S. Code § 1623(c).

During Mills' Jury Trial, Hassan was asked on Cross Examination whether he Mills walk of his own accord at any time. Six times in a row Hassan denied seeing Mills walk outside before finally admitting that he saw Mills walk of his own accord (online audio/video 1:59 – 5:05, Appendix 3). Hassan used the statement "I didn't see him walk outside" as a device, trick and scheme to omit and cover up the truth, and material fact, that he observed Mills walking on his own. *See* 18 U.S.C. § 1001 (criminalizing knowingly and willfully "falsif[ying], conceal[ing], or cover[ing]up by any trick, scheme, or device a material fact,"); 17 C.F.R. § 240.10b-5 (prohibiting, under the securities laws, "mak[ing] any untrue statement of a material fact or [ ] omit[ting] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading").

During Mills' MVA hearing Hassan testified that after he asked Mills for his Driver's License at the traffic stop Mills "just started crying" (online audio/video 6:26 – 6:38). Hassan did not mention that Mills was crying at the traffic stop in his Police Report, nor when he testified at length at Mills' District Court Trial and Jury Trial.

At the first trial and during a suppression hearing in Circuit Court, Hassan denied that Mills had requested to communicate with counsel prior to deciding whether to take a breathalyzer test. (complaint at ¶ 38). Hassan changed his testimony while appearing before an Administrative Law Judge at the Office of Administrative Hearings when Mills challenged the administrative suspension. Hassan admitted, under oath, "He wants to talk to a lawyer. I made him, so, I said sure you have a right to talk to your lawyer." Id. at ¶ 38. By the time

Mills was tried in the Circuit Court, Hassan's testimony dramatically changed, and Hassan testified that Mills "probably did request to have an attorney" present to provide advice and *that he* "probably called an attorney." Id. at ¶ 38. This testimony is completely contrary to Hassan's prior testimony.

Hassan was the state's sole witness. Id. at ¶ 32. The only evidence used to convict Mills of Driving under the Influence of Alcohol, and proximately cause Mills' loss of liberty at the conclusion of his District Court trial was Hassan's word; Hassan's sworn written and oral statements before and during trial. Absent Hassan's testimony and Police Report Mills could not and would not have been convicted or prosecuted for any of the offenses of which he was charged. Mills filed an appeal and, through new counsel, obtained additional discovery that was not provided by the state at the first trial. Id. at ¶ 36. Additional facts regarding Lantz and Dull's observations during the arrest were provided to Mills; however, this evidence was neither disclosed or produced at the first trial. Id. at ¶ 37. At the first trial and during a suppression hearing in Circuit Court, Hassan denied that Mills had requested to communicate with counsel prior to deciding to take a breathalyzer test. Id. at ¶ 38. Hassan changed his testimony while appearing before an Administrative Law Judge at the Office of Administrative Hearings when Mills challenged the administrative suspension. Hassan admitted, under oath, "He wants to talk to a lawyer. I made him, so, I said sure you have a right to talk to your lawyer." Id. at ¶ 38. By the time Mills was tried in the Circuit Court, Hassan's testimony dramatically changed, and Hassan testified that Mills "probably did request to have an attorney" present to provide advice and that he "probably called an attorney." Id. at ¶ 38. This testimony is completely contrary to Hassan's prior testimony.

Mills was found not guilty by a Howard County Jury for the DUI/DWI charges. Id. at ¶ 43.

It is indisputable that the Howard County District Court relied on Hassan's fabricated evidence to convict Mills of drunk driving offenses, because Hassan made oaths during other proceedings, that contradicted Hassan sworn material statements during Mills District Court trial used to incriminate Mills for drunk driving (e.g. Mills being unable to stand of his own accord and even having to be supported as he left the barracks – contradicted by Hassan's testimony that Mills walked of his own accord as he left the barracks).[2]

## V. LEGAL BACKGROUND

### A. Dismissal

In ruling on a Rule 12(b)(6) motion to dismiss, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

All complaints must meet the "simplified pleading standard" of Rule 8(a)(2), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) does not require "detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It requires only that a plaintiff plead sufficient facts to "give the defendant

---

[2] *See Hardwick v. Cnty. of Orange, 844 F.3d 1112, 1119 (9th Cir. 2017)* ("[T]here is no such thing as a minor amount of actionable perjury or of false evidence that is somehow permissible. Why? Because government perjury and the knowing use of false evidence are absolutely and obviously irreconcilable with the Fourteenth Amendment's guarantee of Due Process in our courts.")

fair notice of what the . . . claim is and the grounds upon which it rests." Id. (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A court may not dismiss a complaint merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556).

Moreover, where "the motion to dismiss involves 'a civil rights complaint, [a court] must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.'" *Hall v. Burney*, No. 11-6566, 2011 WL 5822176, at *1 (4th Cir. Nov. 18, 2011) (quoting *Edwards*, 178 F.3d at 244). Applying this standard of review in the light most favorable to the Plaintiff, the Defendants' motion to dismiss should be denied for the reasons set forth below. Applying this standard of review in the light most favorable to the Plaintiff, the Defendants' motion to dismiss should be denied for the reasons set forth below.

    **B.**    Summary Judgment

When a party moves for dismissal but relies on evidence outside the pleadings, as Defendants do here, Fed. R. Civ. P. 12(d) directs courts to treat the motion as one for summary judgment. A motion for summary judgment should not be granted unless the movant can prove "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); see also *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir. 2003). In evaluating the evidence, the Court should "'draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to

particular evidence."' *Vathekan v. Prince George's Cnty.*, 154 F.3d 173, 175 (4th Cir. 1998)

(quoting *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991)). Summary judgment

*must fail if* the dispute about a material fact is "genuine" or "is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 243

(1986). Thus, "the inquiry is whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is **so one-sided** that one party must prevail as a

matter of law." *Id.*

As discussed below, Defendants have failed to meet their summary judgment burden

because they rely upon mere inferences, which should be construed in Mills' favor, and

factual allegations that are not yet established, through discovery or otherwise, and which are

in serious dispute. The Motion for Summary Judgment should therefore be denied.

Plaintiff's Rule 56(d) affidavit is included herein at page 40 explaining the "specified reasons"

why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).

## VI. ARGUMENT

Defendants' motion to dismiss the claims in Mills' Complaint against them or, in the

alternative, to grant Defendants' summary judgment on Mills' claims fails both under Fed. R.

Civ. P. 12(b)(6) and Fed. R. Civ. P. 56, and thus must be denied.

First, Mills has pled genuine facts sufficient to state his claims against Defendants,

and thus dismissal of those claims is not proper. Second, Defendants' motion for summary

judgment must be denied because Defendants fail to demonstrate a lack of disputed issues

of material fact. Moreover, summary judgment is premature at this time. Defendants' motion

for summary judgment therefore also should be denied.

**A.** Heck v. Humphrey Does Not Preclude any of Mills' Claims

The Supreme Court in *Heck v. Humphrey* held that when a Plaintiff brings a §1983 action against the "county prosecutors and state police investigator alleging that his conviction violated his constitutional rights, Plaintiff must prove that the conviction or sentence has been reversed on direct appeal." 512 U.S. 475, 487 (1994). In *Heck,* Plaintiff filed a direct appeal from a conviction that was pending, and filed this suit under 42 U.S.C. §1983, claiming that the respondents had "engaged in unlawful acts that had led to his arrest and conviction." *Id.* However, unlike Mills' case, in *Heck,* the criminal conviction was upheld on appeal, and therefore, Heck could not bring his civil claim for damages. *Id.* Here, the most prominent claim, being Mills' criminal charges of driving under the influence, and driving while impaired, *were reversed* on direct appeal.

Defendants ask this court to interpret *Heck v Humphrey* to say that all of Plaintiffs § 1983 Claims are precluded "because all claims where not terminated in his favor". Federal Appellate Courts have explained that Plaintiffs need only to win on the criminal charges for which they claim they were charged and prosecuted even when they have been convicted for other criminal offenses. Mills does not need to have won on all charges to sue Hassan for framing him on drunk driving charges, Mills only needs to win on the drunk driving charges.

> When a plaintiff is pursuing false arrest charges, a defendant initiating criminal proceedings on multiple charges is **not necessarily insulated in a malicious prosecution case merely because the prosecution of one of the charges was justified.** As the Court of Appeals for the Second Circuit explained in *Posr,* courts 'need to separately analyze the charges claimed to have been maliciously prosecuted.' *Posr,* 944 F.2d at 100. Accordingly, although the district court properly dismissed Johnson's claim of false arrest based on the existence of probable cause to arrest Johnson for terroristic threats, the court erred in dismissing his claim of malicious prosecution inasmuch as the court did not consider whether there was probable cause to initiate the criminal

proceedings with respect to the remaining offenses. Therefore, we will reverse the order for summary judgment...

*Johnson v. Knorr,* 477 F.3d 75, 85 (3d Cir. 2007)(emphasis added).

Defendants acknowledge in their brief "the only claim not precluded by these convictions is the claims related to the driving under the influence offenses." Plaintiff agrees, his entire complaint detailed how Hassan fabricated evidence while acting in an investigative capacity and committed perjury at trial, all related to the driving under the influence and driving impaired offenses. "Hassan falsified his police report regarding the events that transpired; namely the alleged basis for the stop, results of the SFST (which test never occurred), and physical observations about Mills at the scene and barracks" (Complaint ¶ 28.) "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a truthful showing [...] it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Kelly v. Curtis,* 21 F.3d 1544, 1554-55 (11th Cir. 1994); *Franks v. Delaware,* 438 U.S. 154, 165-66, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667 (1978) (quoting *United States v. Halsey,* 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966)).

The United States Court of Appeals for the Fourth Circuit has recognized that "if any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit. Actions taken in contravention of this prohibition necessarily violate due process (indeed, we are unsure what due process entails if not protection against deliberate framing under color of official sanction)" *Washington v.*

14

*Wilmore*, 407 F.3d 274, 285 (4th Cir. 2005); *Limone v. Condon*, 372 F.3d 39, 44-45 (1st Cir. 2004).

Even in circumstances where a § 1983 Plaintiff was lawfully arrested he would still be entitled to bring § 1983 claims against state actors for fabricating evidence, "to hold that police officers, **having lawfully arrested a suspect, are then free to fabricate** false [evidence] at will, **would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice.** "*Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir. 1997). In *Jocks* the United States Court of Appeals for the Second Circuit "specifically held that the police had probable cause to arrest but nonetheless reversed the district court's grant of summary judgment on the malicious prosecution claim because there was proof that the officers had later manufactured false evidence. Id. at 128, 130.") *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003).

This Court should reject Defendants' attempt to vitiate what the Fourth Circuit has consistently recognized as a constitutional "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer" *Massey v. Ojaniit*, 759 F.3d 343, 354 (4th Cir. 2014); *Robertson v. Elliott*, 315 Fed. Appx. 473 (4th Cir. 2009). Mills has "plead adequate facts to establish that the loss of liberty— i.e., his conviction and subsequent incarceration— resulted from the fabrication." *Massey, supra, at* 354.

In *Morse* Judge Amon noted, "**Even where no Fourth Amendment violation occurred because there was probable cause to act** (thereby rendering a malicious prosecution claim unavailable), **an independent constitutional claim for the denial of the right to a fair trial can proceed under § 1983 based on allegations that a police officer**

**fabricated evidence,** if that fabrication caused a deprivation of the plaintiff's liberty." *Morse v. Spitzer,* 07-CV-4793 (CBA) (RML), at *7 (E.D.N.Y. Aug. 2, 2012)(emphasis added).

Mills "has pleaded adequate facts to support a causal connection between that fabrication and his convictions." *Massey, supra, at* 355 (and resulting loss of liberty). Mills has exhaustively pled both but-for and proximate causation.

**B.** Plaintiff Is Entitled to Conduct Discovery Before the Court Considers Summary Judgment

Before addressing the Defendants' arguments, summary judgment is inappropriate at this early stage of the litigation because the parties have not yet commenced discovery. "To be sure, the circuit court may 'deny a motion for summary judgment so that a more complete factual record can be developed.'" *Clark v. O'Malley,* 169 Md. App. 408, 420 (2006), aff'd, 404 Md. 13 (2008) (Quoting *A. J. Decoster Co. v. Westinghouse Elec. Corp.,* 333 Md. 245, 262-63 (1994); see also *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 961 (4th Circuit 1996) (stating that generally, summary judgment is only appropriate after "adequate time for discovery").

"Generally, a district court must refuse summary judgment 'where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition.'" Nader v. Blair, 549 F.3d 953, 961 (4th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.5 (1986)). It is "'especially important'" to allow "'sufficient time for discovery ... when the relevant facts are exclusively in the control of the opposing party.'" *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 246-47 (4th Cir. 2002) (quoting 10B *Charles A. Wright et al., Federal Practice & Procedure* § 2741, at 419 (3d ed. 1998)).

**C.** Principles of Res Judicata and Collateral Estoppel DO NOT Bar Plaintiff's Claims Because of the Different Burdens of Proof and the Distinct Issues in the Civil Proceeding

The Defendants incorrectly allege that the principles of Res Judicata and Collateral Estoppel act as a complete bar to Plaintiff's claims as claim preclusion does not extend from criminal prosecutions to civil actions. The court's traditional division between civil and criminal procedure does not contemplate any opportunity for joining any civil claim with the criminal prosecution. § 4474 Criminal Conviction as Preclusion in Civil Proceeding, 18B Fed. Prac. & Proc. Juris. § 4474 (2d ed.). In *Wells v. Bonner*, C.A.5th, 1995, 45 F.3d 90, 94–95, the plaintiff was arrested on charges of resisting a search and disorderly conduct and was convicted of resisting a search. He then sued the police officers under § 1983, claiming malicious prosecution, false arrest, and use of unnecessary force. The court concluded that so long as the state conviction remained, the false-arrest and malicious prosecution claims were not mature.

In the present case, Mills appealed the guilty convictions and was found not guilty by a Howard County jury for the DUI/DWI charges, failing to obey a properly placed traffic control device and reckless driving, he was found guilty of failing to obey designated lane direction and negligent driving and driving a vehicle not equipped with interlock. Therefore, as the predicate testimony of the Defendants was either not believed or insufficient to convict Mills, his civil claims could not be precluded.

In *Ingram v. City of Columbus*, C.A.6th, 1999, 185 F.3d 579, 592–593, the court declined "to extend res judicata to bar this claim where there is no indication that Ingram and Collins,

who would have been in a defensive posture during criminal proceedings on the obstruction charges, could have raised their § 1983 claims during those proceedings."

Mills' claims under 42 U.S.C.A. § 1983 were not able to be properly raised in the state-court criminal proceedings. Therefore, Mills' state conviction for traffic related offenses did not establish claim preclusion barring an action against the arresting officers for use of unlawful acts. In *Donovan v. Thames*, 105 F.3d 291 (1997), the court ruled that "[S]ince we have no indication that Donovan could have raised his § 1983 excessive force claim as a separate cause of action in the state-court criminal proceeding," the claim "cannot be barred by claim preclusion." The court added in a footnote that even if the § 1983 claim could have been raised in the state prosecution, claim preclusion should not apply because of the defensive posture of a criminal defendant who did not choose to initiate the state proceeding. Id. at 295 & n. 5. "Res judicata or claim preclusion is not applicable in the present case because plaintiff's 42 U.S.C.A. § 1983 action is not the same cause of action as the state's criminal case against her." *Vinson v. Campbell Cty. Fiscal Ct.,* 820 F.2d 194, 197 (1987). See also *Cortese v. Black, D.C.Colo.* 1993, 838 F.Supp. 485, 493 (1993) (A civil rights claim against police officers for Fourth Amendment violations in arresting the plaintiff was not the same cause of action as the state prosecution of the plaintiff after the arrest. Claim preclusion did not bar the action.)

Evidence Rule 803(22) provides that even though evidence of a final judgment of guilty, rendered after trial or plea of guilty, is not excluded by the hearsay rule when offered "to prove any fact essential to sustain the judgment" the Advisory Committee Notes state

expressly that no attempt was made to deal with the possible effects of a conviction "as a bar or collateral estoppel." Rule 803(22) is discussed in vol. 30B, § 7063.

The difference between the burdens of proof between a criminal and civil trial also affect the principles of res judicata and collateral estoppel and cannot bar a claim in civil court that was only previously argued in criminal court. In *Helvering v. Mitchell,* the Court held, "The difference in degree of the burden of proof in criminal and civil cases precludes application of the doctrine of res judicata." 58 S.Ct 630, 632 (1938); *see United States v. One Assortment of 89 Firearms,* 104 S.Ct. 1099, 1103 (1984). Res Judicata clearly could not bar the civil claim because the issue presented in the criminal proceedings was not identical to the issue in the prior adjudication. While similar facts may be relevant to both the criminal and civil proceedings, different issues dominate the two situations, and therefore, res judicata cannot apply.

Moreover, Defendants' argument that principles of collateral estoppel bar Plaintiff's claim must fail for the same reasons. In *One Lot Emerland Cut Stones v. United States,* the Court stated that "the difference in the burden of proof in criminal and civil cases precludes application of the doctrine of collateral estoppel." 409 U.S. 232, 235 (1972). In order for collateral estoppel to apply, the issue decided in the prior adjudication must be identical with the one presented in the current action. *Colandrea v. Wilde Lake City. Ass'n,* 361 Md. 371, 391 (2000). Here, as previously noted, while similar facts may exist and be admitted in either trial, the ultimate issues are distinct, and the allegations focus on the government's actions, not Mills'. Therefore, neither collateral estoppel nor res judicata apply in the present case.

**D.** Defendants Are Proper Parties to The Action Because §1983 Provides a Right of Action for Individuals To Sue Any Government Official In His or Her Official Capacity

The Eleventh Amendment does not prohibit the State of Maryland, the Maryland State Police, and the individual Defendants from being sued in Federal Court. 42 U.S.C. §1983 specifically states, "Every person who . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . ." The only exception under this statute applies to judicial officers only when injunctive relief is sought. 42 U.S.C.A. §1983 (1996). Here, Mills is seeking damages for the injustice that he underwent as a result of Defendants' corrupt practices. The wrongful practices Mills asserts, and the damages that he seeks, are not barred by the exception under the statute, and therefore, Defendants are "Persons" for purposes of 42 U.S.C. §1983.

Defendants rely on *Pennhurst States School and Hospital v. Halderman* to support their claim that a State's waiver of sovereign immunity does not imply a waiver of the immunity in the federal courts. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984). However, Defendants argument is irrelevant to the issue at hand, because the plaintiffs in *Pennhurst* relied on a completely distinct statute and made no reliance on 42 U.S.C. §1983 whatsoever. *Id.*

Defendants further rely improperly on *Will v. Michigan Dept. of State Police*, to claim that the State of Maryland, The Maryland State Police, and the Individual defendants are not "persons" for purposes of 42 U.S.C. §1983. 491 U.S. 58, 71 (1989). In *Hafer v. Melo*, Justice O'Connor specifically struck down the argument made in *Will* that §1983 does not authorize

suits against state officers for damages arising from their official acts. 503 U.S. 21, 23 (1991). The Court specifically held, "state officials sued in their individual capacities are 'persons' for purposes of §1983." *Id.* In *Hafer*, the Court allowed Plaintiffs to bring monetary claims against Defendant Hafer, the auditor general of Pennsylvania, for actions taken under color of state law. *Id.* The Court held that to establish personal liability in a §1983 action, the plaintiff must only show that the official acted under "color of state law" and "caused the deprivation of a federal right." *Id.* at 25; *see Okwa v. Harper*, 757 A.2d 118 (Md. 2000) (holding that §1983 permits a plaintiff to recover damages when an individual, "acting under color of state law, transgresses a federally created right of the plaintiff"). The Court further explained that under a personal liability action, the defendant may only assert personal immunity defenses, for example, that defendant reasonably relied on existing law. Clearly, this defense is inapplicable, as Mills claims that Defendant intentionally acted in a corrupt manner, under color of state law, by depriving him of his rights under the Constitution. No personal immunity defense is applicable in such a scenario, as no objectively reasonable police officer could believe that corruption is lawful in any scenario.

Further, Defendants acknowledge that Maryland has waived its governmental immunity. Thus, "it would defy logic . . . to have waived sovereign immunity . . . while simultaneously intending to preserve Eleventh Amendment immunity." *Board of Education of Baltimore County v. Zimmer-Rubert*, 973 A.2d 233, 242 (Md. 2009). Therefore, it seems clear that Maryland did intend to waive its sovereign immunity in federal courts.

**VII.    Plaintiff States a Claim for Bystander Liability Against Lantz and Dull**

In *Randall*, the Fourth Circuit set forth three elements for determining bystander

liability:

It is well-established that an omission to act, when coupled with a duty to act, may provide a basis for liability. The concepts of bystander and supervisory liability are each premised on omissions, but there are significant differences between them. The concept of bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them [...] Therefore, if a bystanding officer (1) is confronted with a fellow officer's illegal act, (2) possesses·the power to prevent it, and (3) chooses not to act, he may be deemed an accomplice and treated accordingly. *See O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) (observing that officer who stands by and does not seek to assist victim could be "tacit collaborator").

*Randall v. Prince George's County, Maryland*, 302 F.3d 188, 202 (4th Cir. 2002).

(1)     At the point that both officers arrived at the scene, they assumed the duty to act and protect any individual at that scene. They were confronted with Hassan's illegal acts during the traffic stop and the litigation that followed.

(2)     Lantz and Dull possessed the power to stop the unjustified arrest and battery committed by Hassan right in front of them. They had a duty to inform their supervisors, prosecutors and Mills Defense Counsel about what they had witnessed during the traffic stop and make them aware that Hassan's account was untruthful.

(3)     They chose not to act when confronted with Hassan's illegal actions.

Lantz and Dull submitted affidavits swearing that they "had no interactions with Plainitff" and "did not observe Sr. Tpr. Hassan act improperly in any regard." Their sworn statements are in dispute, because Mills' sworn statement is that he had a conversation with Lantz and Dull, and they witnessed Hassan grabbing him from behind and cuffing him then taking him to the cruiser without provocation ¶ 40. Hassan's statements after the arrest, cast a new light on the value of Lantz and Dull as witnesses to the traffic stop because Lantz and Dull witnessed the truth, that Plaintiff appeared sober, and had a conversation them while standing on his own, and if they had shared this information with prosecutors it may prevented the continuing wrongful prosecution of Mills for the drunk driving charges.

## VIII. Plaintiff's Constitutional Claims Have Merit

*A. Mills Has Properly Stated Claims for Violations His 4th & 14th Amendment Rights*

Defendants attempt to establish probable cause by citing that "an indictment, fair upon its face, returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause" in a subsequent civil proceeding. *Zoblonsky v. Perkins*, 230 Md. 365, 368–69 (1963) (quoting Restatement, Torts § 667). However, Defendants purposefully omit a crucial segment of this sentence, which states that this rule applies '**unless established by fraud, deceit, or other corrupt means.** " *Zoblonsky*, 230 Md. at 368–69. Mills' argument clearly falls within this exception.

A plaintiff who claims that a government official deprived him of his liberty by maliciously initiating criminal proceedings against him without probable cause invokes the protection of the Fourth Amendment. *Albright*, 510 U.S. at 274-75 (holding that the Fourth Amendment protects the right to be free from prosecution except on the basis of probable cause); Singer, 63 F.3d at 116 ("The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person.").

In contrast, a claim that a state government official denied an accused his right to a fair trial finds its roots in the Fourteenth Amendment, which secure the fundamental right to a fair trial in a criminal prosecution. *See Holbrook v. Flynn*, 475 U.S. 560, 567 (1986) (recognizing that the Sixth and Fourteenth Amendments secure the constitutional right to a fair trial); *United States v. Ruiz*, 536 U.S. 622 (2002) (same). When a government official manufactures false evidence against an accused, and the use of that fabricated evidence results in the deprivation of the accused's liberty, the government official infringes the

accused's constitutional right to a fair trial in a manner that is redressable in a § 1983 action for damages. *Zahrey v. Coffey*, 221 F.3d 342, 348- 49 (2d Cir. 2000); *Ricciuti*, 124 F.3d at 130.

*Mills* sufficiently alleged in his complaint that Hassan's manufactured evidence regarding Mills appearing drunk, was the *sine qua non* basis for his convictions in District Court for the drunk driving charges ¶ 82. Defendants argue that any alleged falsehoods were not material, but this argument must fail. Defendant Hassan's lies relate to the very nature of the DUI charge itself.

**Plaintiff's State Claims Have Merit**

*A. Plaintiff Has Properly Stated a Claim for Malicious Prosecution, False Imprisonment, and False Arrest*

Defendant's attempt to argue that Mills' conviction establishes probable cause as a matter of law and defeats all three of these torts. Defendants claim that it is irrelevant that Mills' convictions were reversed on appeal. As previously noted, Defendants purposefully omit the important exception to this rule, upon which probable cause is not established as a matter of law by a conviction when obtained by fraud or other corrupt means. Since Mills' argument rests upon Hassan's lies, his claims fall within the exception to the rule, and must proceed to trial. If a malicious prosecution claim is based on allegations of evidence fabrication by police officers, then "the existence of **probable cause based on non-fabricated evidence ceases to be a defense for the fabricator.**" [3] *Richardson*, 2006 WL

---

[3] There is no dispute that Hassan is a "fabricator" he made contradictory material statements while under oath, which by necessity constitutes perjury as matter of law and under MD CR § 9-101(c). Hassan also intentionally created false impressions of material fact, both by using his statement "I didn't see him walk outside" as a device to obfuscate the fact that he saw Mills walking on his own.

2792768, at *7 (emphasis added)(interpreting *Jocks* and *Ricciuti*); see also *Schiller*, 2008 WL 200021, at *9. Hassan's assertion that he had probable cause based on the interlock charge thus *cease to be a* defense for him as a fabricator.

The elements of tortious false imprisonment under Maryland law are:

1) Deprivation of plaintiff's liberty;

2) Perpetrated by the defendant;

3) Without legal justification and without consent of the plaintiff.

Further, whether legal justification exists is to be judged by the principles applicable to the law of arrest. *Green v. Brooks*, 125 Md. App. 349, 366–67, 725 A.2d 596, 605 (1999); and see, *Scott v. Jenkins*, 345 Md. 21, 29, 690 A.2d 1000 (1997); *Ashton v. Brown*, 339 Md. 70, 119, 660 A.2d 447 (1995); *Montgomery Ward v. Wilson*, 339 Md. 701, 721, 664 A.2d 916 (1995); *Fine v. Kolodny*, 263 Md. 647, 651, 284 A.2d 409 (1971), cert. denied, 406 U.S. 928, 92 S.Ct. 1803, 32 L.Ed.2d 129 (1972); *Fleisher v. Ensminger*, 140 Md. 604, 620, 118 A. 153 (1922); *Lewin v. Uzuber*, 65 Md. 341, 348–49, 4 A. 285 (1886); *Mitchell v. Lemon*, 34 Md. 176, 180 (1871). "The elements of false imprisonment are the same as the elements for false arrest." *Davis v. DiPino*, 121 Md.App. 28, 38, 708 A.2d 357, cert. granted, 350 Md. 488, 713 A.2d 980 (1998). Thus, the benchmark for the detention of the Mills by the Officer is whether he had any legal authority to arrest or seize Plaintiff **at the time of the detention**, and absent such legal authority, false imprisonment occurred. Regarding the driving without an interlock charge, Hassan added the charge on after Mills was already at the Barracks and was about to be

Hassan also obviously lied that Mills "just started crying" at the traffic stop (online audio/video 1:59 – 5:05, 6:26 – 6:38) no reasonable jury could believe otherwise.

25

released to Garcia.[4] Specifically, when Hassan was taking out the evidence bag to return Mills property, he removed Mills ID from the wallet and inspected it, and saw what he *believed to be an* interlock restriction, then proceeded to add on the charge. However, Hassan was unaware of any such restriction at the time he effectuated the seizure, and instead lied about identifying the restriction during the traffic stop in his police report. Hassan's observation regarding the interlock restriction cannot be applied retroactively to the traffic stop where Hassan had already committed an unreasonable seizure.

Mills has convincing evidence that an unreasonable seizure occurred; by pointing that Hassan fabricated his probable cause to effectuate the seizure. Further, there was a favorable termination of the criminal proceeding on appeal, when the driving while intoxicated and impaired charges were overturned. While not all charges were dropped, the primary charges, which were the reason for the arrest in the first place and the focus on the officer's lies, were overturned.

### B. *Plaintiff's Has Stated a Claim for Battery (Count X).*

Under Maryland Law, batter is the "unlawful application of force to the person of another." *Snowden v. State*, 583 A.2d 1056, 1059 (Md. 1991). As established in the preceding section, the actions of Hassan constitute false imprisonment on the basis of the lack of legal authority. Without legal authority to detain, by definition, there can be no legal authority to handcuff or physically grab plaintiffs either.

---

[4] Hassan's fabricated observations of Mills having bloodshot eyes, and a strong odor of alcohol, and being unable to stand, have been contradicted by any other eye witnesses who have testified at trial including Garcia who testified Mills showed no sign of impairment or trouble with balance ¶ 42.

Handcuffing without legal authority constitutes battery. *Love v. Port Clinton*, 524 N.E.2d 166, 167 (Ohio 1988) ("'[S]ubduing" and "handcuffing" -- are acts of intentional contact which, unless privileged, constitute a battery."); and see *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1209 (10th Cir. N.M. 2006) ("If an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest."); *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 294 (S.D.N.Y. 2001); *Johnson v. Suffolk County Police Dept.*, 245 A.D.2d 340, 665 N.Y.S.2d 440, 440-41 (N.Y. App. Div. 1997). Defendant Hassan admits to handcuffing plaintiffs. There was no legal authority to arrest or seize physically, battery is established.

### C. There Is Strong Evidence Suggesting Hassan Acted with Negligence or Gross Negligence (Counts XI-XII).

Defendants acknowledge that to state a claim for gross negligence, a plaintiff must allege facts establishing "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another." *Cooper v. Rodriguez*, 443 Md. 680, 708 (2015) (quoting *Barbre v. Pope*, 402 Md. 157 (2007)). Further, a party is grossly negligent only if he or she "inflicts injury intentionally or is so utterly indifferent to the rights of others that he or she acts if such rights did not exist." *Cooper*, 443 Md. at 708.

Defendants claim that because Mills alleges that Hassan *intentionally* lied about the probable cause used to arrest and charge Mills, this cannot constitute gross negligence or negligence. However, Defendants are supporting the exact argument they attempt to rebut, since gross negligence includes inflicting injury intentionally. By intentionally lying in order

27

to obtain an arrest and conviction, Hassan inflicted injury intentionally. Although Hassan did not inflict serious physical injury, Hassan did aggressively grab Mills and drag him to the car; but more importantly, he inflicted serious injury to defendant's reputation and future by contaminating his criminal record with lies and false accusations. Mills also sustained emotional injuries as a result of the Defendants' conduct.

Further, the undisputed fact that Hassan made contradictory declarations in his police report establishes liability for negligence in itself. *See Winslow v. Smith*, 696 F.3d 716, 736 (8th Cir. 2012) ("'Law enforcement officers ... have a responsibility to criminal defendants to conduct their investigations and prosecutions fairly....' Wilson, 260 F.3d at 957. "There is no countervailing equally important government interest that would excuse [officers] from fulfilling their responsibility" to conduct a fair investigation. Id.")

Thus, whether Hassan acted with gross negligence "necessarily depends on the facts and circumstances in each case and is usually a question for the jury." *Id.* It is a question of law "only when reasonable people could not differ as to the rational conclusion to be reached." *Id.* In the present case, the facts must be left to the jury to determine whether they amount to gross negligence.

Further, if a jury does not find that Defendants are grossly negligent, they would at least find that the facts support a strong case of negligence. The complaint does not attempt to allege, as the Defendants claim, that intentional acts amount to negligence. Rather, the complaint states that Defendants owed a duty not to engage in the activities they knew or should have known would lead to the assault, arrest, interrogation, and charging of Mills. The complaint against Hassan states that he had a duty to conduct himself in a reasonable

manner, and by failing to do so, he acted negligently. Thus, it seems clear that Defendants wrongly reference the complaint.

Lastly, Defendants believe that Mills' claims were brought against improper Defendants. However, this belief is incorrect because the State can be **sued for negligence under §5–522(a), and State Personnel can be sued under §5–522(b). Thus, Mills is entitled to damages, which may exceed $400,000 under §12–104(c)(1)(i) or (ii). Thus, Mills claims must continue to trial.**

> *D. Plaintiffs Civil Conspiracy Claim Is Sufficient Because Plaintiff Has Alleged Facts Showing Acquiescence By Officers to Hassan's Unlawful Conduct (Count XV)*

"Acquiescence can amount to a conspiracy agreement when, as here, one police officer watches an open breach of the law and does nothing to seek its prevention." *Hafner v. Brown*, 983 F.2d 570, 578 (4th Cir. 1992). Hassan's unlawful conduct is clearly established in the complaint, and even if Cpl. Lantz and TFC Dull were only at the scene for minutes, they acquiesced to Hassan's unlawful conduct at the time of Hassan's acts and allowed Hassan to grab Mills and arrest him without justification, and to file a false police report.[5] Lantz and Dull's acquiescence continued over more than a year of litigation and they chose not to inform anyone about the truth of what occurred during the traffic stop, that Mills was standing on his own having a conversation with them and that Hassan has lied about having carried Mills from his car directly to the patrol car.

---

[5] The United States Court of Appeals for the Second Circuit has appropriately noted that: "Lying is wrong, and if the police lie while acting in their official capacity, they also violate the public trust. Courts must ensure that such serious accusations receive appropriate scrutiny" *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 125 (2d Cir. 1997).

29

*E. Plaintiff's Negligent Hiring, Training, and Supervision, and Retention Claim And Pattern and Practice Claim (Counts XIV and XVI)*

"The principle is firmly entrenched that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates. *See Slakan v. Porter,*737 F.2d 368 (4th Cir. 1984), cert. denied, 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985); *Orpiano v. Johnson,* 632 F.2d 1096 (4th Cir. 1980), cert. denied, 450 U.S. 929, 101 S.Ct. 1387, 67 L.Ed.2d 361 (1981); *Withers v. Levine,*615 F.2d 158 (4th Cir. 1980). In *Slakan,* we reasoned that liability is not premised upon respondeat superior but upon 'a recognition that **supervisory indifference** or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.' *Slakan,* 737 F.2d at 372-73." *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir. 1994).

Defendants' initial argument states that the Eleventh Amendment protects defendant from suit. However, as previously established, Mills may bring suit under 42 U.S.C. §1983. Further discovery is required to determine the exact negligent practices of hiring, training, and supervision of Defendant Officers, and specifically Hassan. Discovery also is necessary to establish the extent to which Maryland State Police have a policy that allows a perversion of the investigative process by permitting officers like Hassan to submit phony Police Reports that are pre-filled in detail as in the instant case, as failing part of every SFST.

## IX.    None of the Defendants Are Protected By Immunity

*A.    Hassan, Lantz, and Dull Are Not Entitled To Immunity On All 42 U.S.C. §1983 Claims (Count I-IV)*

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). To

determine whether a given officer falls into either of those two categories, a court must ask whether it would have been clear to a reasonable officer that the alleged conduct "was *unlawful in the* situation he confronted." *Saucier, supra,* at 202, 121 S.Ct. 2151.

As Judge Bennett has previously explained in *Mills,* "[A]lthough Maryland police officers are entitled to qualified immunity when performing their official duties, **they lose such protection when they commit 'an intentional tort or act with malice.**" *Mills v. PPE Casino Resorts Md.,* LLC, Civil Action No.: RDB-15-495, at *4-5 (D. Md. Jul. 10)(emphasis added)(quoting *Ashton v. Brown,* 339 Md. 70, 117, 660 A.2d 447, 470 (1995)).

In the present case, Mills is alleging that Defendant Officers acts and omissions "were objectively unreasonable and undertaken with actual malice, willfulness, and depraved indifference to the rights of Mills such that Officers' actions shock the conscience." ¶ 7. Hassan fabricated probable cause to effectuate Mills' seizure and thus "qualified immunity would indeed be unavailable in such circumstances, because when an officer fabricates probable cause to prosecute, it cannot be said that the officer had an objectively reasonable belief that probable cause existed." *Morse v. Spitzer,* 07-CV-4793 (CBA) (RML), at *10 (E.D.N.Y. Jan. 29, 2013). *See also Scotto v. Almenas,* 143 F.3d 105, 113 (2d Cir. 1998). Hassan's manufactured evidence continued to infect the proceedings with falsity beyond the initial seizure because Hassan's fabricated evidence was used against Mills at trial.

As previously established, 42 U.S.C. §1983 allows a plaintiff to recover damages "when an individual, acting under the color of state law, transgresses a federally created right of the plaintiff." *Okwa v. Harper,* 757 A.2d 188, 193 (Md. 2000). Defendants attempt to argue that qualified immunity applies, but they are clearly wrong. Qualified immunity involves first,

whether there was a constitutional violation. Here, there was clearly a constitutional violation

when Hassan caused Mills to be convicted and imprisoned for drunk driving offenses of

which Mills is innocent, based on intentionally fabricated evidence. Second, qualified

immunity requires a showing of whether the right was clearly established at the time of the

challenged conduct. *Pearson v. Callahan*, 555 U.S. 223 232 (2009). Here, there is a clearly

established right to be free from deprivation of liberty as a result of the fabrication of

evidence by a government officer and to be free from searches and seizures that have been

predicated on manufactured evidence.

As previously noted, Hassan clearly lacked probable cause to arrest, search, and

charge Mills for driving under influence, driving impaired or reckless driving. Moreover even

if this court found that Hassan had probable cause for the arrest, he would still not be

entitled to qualified immunity because his fabricated evidence that was used to convict Mills

violated Mills' Fourteenth Amendment right to a fair trial. *Johnson, supra,* at *85; Morse, supra,*

at *7. Hassan's perjury and fraud violated Mills' Fourteenth Amendment right to Procedural

Due Process through a "corruption of the truth-seeking function of the trial process." *Morse*

*v. Fusto*, 804 F.3d 538, 548 (2d Cir. 2015) (quoting *Ricciuti, supra, at* 130 (2d Cir. 1997); *United*

*States v. Agurs*, 427 U.S. 97, 104, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Giglio v. United States*,

405 U.S. 150, 153 (1972); *Mooney v. Holohan*, 294 U.S. 103, 112 (1935). Mills' Fourteenth

Amendment right to Substantive Due Process was violated when he was adjudicated as

guilty of DUI/DWI based on an officer's knowing falsehoods and deprived of his

fundamental liberty interest in freedom from bodily restraint. By willfully placing Mills' life in

jeopardy on the basis of falsities, Hassan's acts fall within "a narrow band of extreme

misbehavior by government agents acting under color of law: mistreatment of a person that is 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Arar v. Ashcroft*, 532 F.3d 157, 203 (2d Cir. 2008) (quoting *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007)), reh'g granted (Aug. 12, 2008).

> ### B. *Hassan, Cpl. Lantz, and TFC Dull Are Not Entitled to Maryland Statutory Immunity for All Maryland Claims*

In Maryland, "[a]n official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority [is] immune as an official or individual from any civil liability for the performance of the action. Md. Code Ann., Cts. & Jud. Proc. § 5-507(b)(1). This statutory grant of immunity extends to police officers. *Owen-Williams v. City of Gaithersburg, Civ. A. No.* 8:10-cv-0185-PJM, 2011 WL 53082, at *5 (D. Md. Jan. 7, 2011), appeal dismissed, 435 F. App'x 232 (4th Cir. 2011).

A plaintiff demonstrates "actual malice" with facts indicating "that the officials intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." Id. (citing *Elliott v. Kupferman*, 473 A.2d 960, 969 (Md. Ct. Spec. App. 1999)); see also *Davis v. DiPino*, 637 A.2d 475, 479 (Md. Ct. Spec. App. 1994), rev'd on other grounds, 655 A.2d 401 (1995) (stating that a plaintiff must include factual allegations of actual malice to defeat the defendant's invocation of statutory immunity).

Mills specifically alleges that Hassan acted "with an evil and rancorous motive influenced by hate, the purpose being to deliberately and willfully injure Plaintiff" ¶ 87. "Defendants committed these aforementioned actions with malice, evil intent, the intent to

deceive and defraud, with depraved indifference for the constitutional rights of Plaintiff, and for the purpose of injuring the Plaintiff such that it shocks the conscience." ¶ 88.

Mills thus is asserting that the Officer Defendants "intentionally performed an act without legal justification or excuse, . . . with an evil or rancorous motive influenced by hate[.]" *Owen-Williams,* 2011 WL 53082, at *5 to "deliberately and willfully" to injure the Plaintiff.

## X.     A Reasonable Jury Is Likely To Believe Plaintiff's Version of Events

Defendants attempt to claim that there is no objective evidence that support's Mills' depiction of events. However, as the record clearly shows, much of Hassan's material testimony constitutes perjury as a matter of law and in addition there are other inconsistencies with Hassan's chain of events and with the objective evidence listed in the record. This itself provides strong proof that at the very least, further discovery is required to establish why these inconsistencies are in place.

A reasonable jury could find that Hassan became upset that Mills refused to perform SFST when instructed to do so, and retaliated by falsely arresting him, falsely charging him with drunk driving offense and knowingly lying about the facts surrounding the arrest. Furthermore a jury could find that Mills suffered a loss of liberty at the conclusion of his District Court trial based solely on Hassan's fabricated evidence, that Hassan did so with actual malice and that Hassan's actions shock the conscience. A jury could also find that Lantz and Dull acquiesced to Hassan's conduct, thereby engaging in a conspiracy. Lastly, a jury could believe that the State and the Maryland State police allowed a climate of poor

policing to occur by not properly hiring, training or terminating officers that they knew were not sufficient to perform their duties on behalf of each Defendant.

## XI. Conclusion

Defendants fail to meet their burden to demonstrate as a matter of law that they are entitled to dismissal of the claims against them because, if all the facts alleged in the Complaint are assumed to be true, it is clear that Mills has stated a claim on which relief can be granted. Based on the facts alleged in the Complaint and Defendants' allegations contained in their instant Motion, it is clear that there are substantial disagreements of fact. Further, due to the fact that no discovery has occurred, this case is not appropriate for dismissal and is not ripe for summary judgment at this point in the proceedings. For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss, or in the alternative for Summary Judgment.

/s/ Justin Mills
Lawrence J. Mills
705 Winhall Way
Silver Spring, MD 20904
Mills0451@yahoo.com
Plaintiff

## OATH AND AFFIRMATION

I, Lawrence Justin Mills, DO SOLEMNLY DECLARE AND AFFIRM, under penalty of perjury, that the contents of the foregoing is true and correct to the best of my knowledge, information, and belief.

_____
Lawrence Justin Mills

10/31/2018
Date

I HEREBY CERTIFY on this 31st day of October, 2018 that a copy of the above Memorandum, and attachments was emailed to phillip.pickus@maryland.gov, PHILLIP M. *PICKUS, ESQ.*, at 1201 Reisterstown Road, Pikesville, MD 21208, attorney for the Defendants.

Lawrence J. Mills

# APPENDIX 1

## TEXT OF CITED STATUTE

***CR § 9-101(c) Contradictory Statements:***

   (1) If a person makes an oath or affirmation to two contradictory statements, each of which, if false, is prohibited by subsection (a) of this section, it is sufficient to allege, and for conviction to prove, that one of these statement is willfully false without specifying which one.

   (2) If the two contradictory statements made in violation of paragraph (1) of this subsection are made in different counties, the violation may be prosecuted in either county.

   (d) Statute of limitation and in banc review. – A person who violates this section is subject to § 5-106(b) of the Courts Article.

CR § 9-101(a) Prohibited: - A person may not willfully and falsely make an oath or affirmation as to a material fact:

   (1) If the false swearing is perjury at common law;

CR § 9-101(b) Penalty: - A person who violates this section is guilty of the misdemeanor of perjury and on conviction is subject to imprisonment not exceeding 10 years.

## APPENDIX 2

### COUNT I: VIOLATION OF CR 9-101(C)

*HOWARD COUNTY* DISTRICT COURT - 06/30/15

BEFORE: JUDGE RICARDO ZWAIG

DIRECT EXAMINATION

BY ELIZABETH ROSEN PROSECUTOR

Q. Let me ask you this, when you released him to whoever came to get him from the Barracks?

A. Correct, correct.

Q. **Did you still support him as he left the Barracks?**

A. **Of course.**

HARFORD COUNTY MVA – 02/04/2016

BEFORE: HONORABLE BRIAN ZLOTNICK

CROSS EXAMINATION

BY JEFFREY HANN ATTORNEY

Q. How about **when he left the station... could he walk on his own accord** on his own power? Did you observe that?

[...]

A. **Yeah he walked on his own. He was able to walk on his own.**

## COUNT II: VIOLATION OF CR 9-101(C)

HOWARD COUNTY CIRCUIT COURT – 02/18/2016

*BEFORE: JUDGE* RICHARD BERNHARDT

CROSS EXAMINATION

BY JEFFREY ZAHLER ATTORNEY

> Q.      That's the mug shot of Mr. Mills at the station... and he's standing on his own just fine there?
>
> [...]
>
> A.      Well I was right in front of him just in case he falls again. He was about to fall so.

HARFORD COUNTY MVA – 02/04/2016

BEFORE: HONORABLE BRIAN ZLOTNICK

CROSS EXAMINATION

BY JEFFREY HANN ATTORNEY

> Q.      How many times was he standing up versus falling down do you know?
>
> A.      He didn't fall down no cause I had to assist but he couldn't keep his balance.

## APPENDIX 3

HOWARD COUNTY CIRCUIT COURT – 02/18/2016

BEFORE: JUDGE RICHARD BERNHARDT

CROSS EXAMINATION

BY JEFFREY ZAHLER ATTORNEY

Q.    When Mr. Mills was being released **did he walk to his friend's car on his own without assistance?**

A.    **I didn't see him walk outside** sir, I released him, I released um Mr. Mills was released to his friend uh Barrack lobby but prior to that I assisted Mr. Mills out of the Barrack Lobby at that time because at that time Mr. Mills was still under my supervision under my supervision now, whatever Mr. Mills does outside, at that time once he's released that's his own responsibility, at that time so **I wasn't aware of anything** he was doing, as long as he wasn't driving.

Q.    But from everything you saw he wasn't **walking on his own?**

A.    **I didn't see him sir I didn't see him outside.**

Q.    A couple of weeks ago you testified at a hearing... you were asked; "how about when he left the station?" In response to whether he could walk on his own and your response was "when he left the station well of course y'know" and then you were asked "could he walk on his own accord, on his own power, did you observe that?" and you said "Well yeah I guess y'know, he walked y'know, I mean I let him. I released to the guy so, once I released him to the guy it's out of my control at that time. He's out my" and you were asked one last time "but you observed him walk on

his own accord?" and you say "um yeah, yeah he walked on his own. He was able to walk on his own." You said that?

A.      Like I said, [voice cracks] excuse me, [clears throat] like I said I released him to the guy I, once Mr. Mills has been released-

        THE COURT:      [Interposing] No no no that's not the question. The question is; at a proceeding a few weeks ago did you say what counsel just represented?

A.      I couldn't recollect sir, that's been weeks ago sir.

Q.      Would it help your recollection to hear your testimony?

A.      Yes sir.

        [Zahler plays back the audio of Hassan's testimony from February 4th, 2016]

Q.      Ok so you did in fact say he was able to walk on his own?

A.      Yes sir I released him in the lobby, but I didn't see him walk outside, I released him in the lobby he walk out and that was fine, I turned my back and I still see the same thing.

Q.      So you testified to something that you didn't actually see?

A.      No you asked me outside, I didn't follow him outside, I released him right in the lobby of the Police Department the Maryland State Police.

Q.      And you saw him walk on his own at that point then?

A.      They both walked and I said goodbye and left went back to my office but I didn't see him walk outside.

Q.      I'm not asking if you saw him walk outside; walking on his own, wherever he

was, saw him walking on his own.

A.     Yes sir.

## PLAINTIFF'S DECLARATION

I obtained the audio from the Howard County District Court, Circuit Court and Bel Air *Motor* Vehicle Administration for the proceedings in which Trooper Anthony Hassan testified falsely related to the DUI charges he filed against me. I am submitting the audio evidence for this civil case. ("lodged audio") available to all parties on the internet at <https://youtu.be/YOS8WOnrUyI > ("online audio/video).

I reviewed hours of testimony, from these proceedings, and identified two instances, where Anthony Hassan made contradictory material declarations while under oath. I created a written transcription of the audio of Hassan's contradictory material declarations labeled "Appendix 2". I also transcribed the audio from a line of questioning from the Circuit Court Jury Trial, which I transcribed as "Appendix 3".

The audio recordings I have submitted (lodged audio, and online audio/video) and associated transcribed testimony propounded herein (Appendices 1-3) are true, accurate, and without alteration.

## OATH AND AFFIRMATION

I, Lawrence Justin Mills, DO SOLEMNLY DECLARE AND AFFIRM, under penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

<div style="display:flex; justify-content:space-between;">

   /s/ Justin Mills                              10/31/2018
Lawrence Justin Mills                                  Date

</div>

## PLAINTIFF'S RULE 56(d) AFFIDAVIT

I cannot present facts essential to justify my opposition at this early stage.

## SPECIFIED REASONS

Relevant Traffic Stop: Lantz and Dull have submitted Affidavits claiming that they "had no involvement in the stop, search, arrest or charging of Mr. Mills" (Page 2 of Dull and Lantz's Affidavit. I have stated in my complaint, pleadings, and also swear in this Affidavit, that I had was standing having a conversation with Dull and Lantz while Trooper Hassan searched my car, therefore, Lantz and Dull certainly did have an involvement because they both observed whether or not I appeared impaired by alcohol, and also observed Hassan's actions, and in general the material facts surrounding the arrest. They both also swear that they "did not observe Sr. Tpr. Hassan act improperly in any regard" this is Lantz and Dull's opinion of Hassan's behavior during the arrest, however, whether or not Hassan's acts were improper, is a question for the finder to fact.

Whether or not Hassan has acted improperly is a matter of context, it is certainly improper for an officer to give a falsified account of the events and circumstances surrounding the arrest. Hassan testified at my District Court, Jury Trial, and MVA hearing, that after making contact with me at the traffic stop, I fell out of the car, and he heroically carried me directly to his patrol car. Lantz and Dull state that upon arriving at the scene "[w]e quickly determined that Sr. Tpr. Hassan did not need any assistance." (Page 2 of Dull and Lantz's Affidavit). What matters is not their determination as to whether Hassan needed assistance. What matters is what they witnesses at the traffic stop, not their opinions about what they saw, but rather simply what they saw, and heard. My Defense Attorney Jeffrey

Zahler interviewed Lantz and Dull both by phone and communicated with them by email. They were shown my photograph by Zahler, and stated I "looked familiar" and that they "believed" they saw me, and stood across from me at the traffic stop. It is therefore necessary to obtain discovery from Lantz and Dull and depose them to ascertain exactly what they saw at the scene to further bring to light Hassan's false statements of material facts, of which the District Court relied upon when adjudicating my guilty for the drunk driving offenses. Lantz and Dull claim they "had no information that would have exculpated the driver", I disagree, if Lantz and Dull were to testify honestly about what they remember observing the night of the address it would be exculpating as it would directly contradict Hassan's mendacious and fabricated account.

After hearing Hassan fabricate these facts at the District Court trial, I requested through counsel the dashcams on appeal, and video footage form the Waterloo Barracks because it would have proven that Hassan lied about the facts surrounding both the initial arrest and what occurred at the Barracks. The Department of State Police responded that the police cars were not equipped with a dashcam or the dashcams was turned off and that there was no video from the Barracks because the video cameras were not set to record, and also happened to be broken.

It is therefore necessary to depose and/or obtain other information through discovery from Lieutenant Bolger, and or other employee of MSP that is in charge of ensuring that surveillance systems are working at a secure facility such as the Waterloo Barracks, and obtain further information regarding the negligence of the State, MSP and its agents.

I filed a formal complaint with MSP IAD within 2 weeks after my District Court Trial, informing MSP IAD that Hassan had committed perjury at my trial. On October 27, 2017 I spoke with Captain David Kitzinger, by phone and he read back verbatim to me a statement made by Assistant State's Attorney Elizabeth Rosen to MSP IAD, that "Trooper Hassan did not commit perjury". On November, 2016 I sent an email to MSP Colonel William Pallozzi and Captain Kitzinger, requesting that they review the finding that my complaint was "unfounded" because it was affected by an error of law, and also provided the audio evidence from the proceedings demonstrating that Hassan made oaths to contradictory material statements in violation of Maryland Criminal Law Article § 9-101(c) (Exhibit 1, 2) I received no response from Pallozzi or Kitzinger, however I did receive a letter from Captain Barrett dated November 22, 2016 stating that "According to Maryland State Policy PER 19.01.03, '... differences of opinion between a trooper and a citizen over the issuance of a traffic citation and/or criminal arrest are not complaints unless the allegations involves misconduct...' on July 14, 2015, you [filed a complaint stating that] Trooper Hassan had perjured himself during his testimony as is related to your impaired driving case [...] Sergeant Krysiak concluded that there is no substance to your complaint [...] This matter has been closed as 'Unfounded' [...] I concur this matter shall remain closed." (Exhibit 3).

It is therefore necessary for me to obtain discovery from Sergeant Krysiak, Colonel Pallozzi, Captain Barrett, and Captain Kitzinger to ascertain how Sergeant Krysiak came to the conclusion that there was no substance to my complaint, as I had provided MSP with both the audio and transcribed testimony of Hassan's contradictory material statements, and

the language of the criminal statute that Hassan violated (§ 9-101(c)). Krysiak, Kitzinger and Pallozzi should be deposed to determine the extent to which they reviewed Hassan contradictory material oaths, and how they came to the conclusion that my complaint was "unfounded" after applying the law to Hassan's testimony. Obtaining discovery from these officers is relevant for all claims that are brought, but especially the negligent supervision and retention claim, as well as custom, pattern, and practice claim. It is necessary to determine how prevalent it is for MSP officers to commit perjury or otherwise fabricate evidence, and still be retained with the department. Furthermore it is necessary to obtain these officers' testimony to establish whether their concurrence or lack of objection to the "unfounded" determination and decision to retain Hassan, and not to criminally charge him, was actuated by malice. This information is material to determine whether these supervisors were merely negligent or grossly negligent, and also how prevalent it is for MSP to make "unfounded" findings that are marked by an error of law and done with the purpose of relieving officers of accountability for criminal misconduct. Furthermore it is necessary to obtain discovery from the aforementioned officers to determine why the State, MSP and MSP supervisors allows officers to manufacture police reports through fraud that includes prefilling the standardized field sobriety tests section of their reports with a detailed account of motorists failing every part of every SFST. This discovery is necessary to establish the extent to which fraud is perpetrated, tolerated, and encouraged, the constitutional violations that result including in the instant matter, as a de facto policy, custom, pattern and practice. It is also necessary to obtain discovery from Colonel Pallozzi as the State and Maryland State Police's

final policymaking authority to determine his knowledge and response to the

aforementioned fraud perpetrated by his subordinates.

## OATH AND AFFIRMATION

I, Lawrence Justin Mills, DO SOLEMNLY DECLARE AND AFFIRM, under penalty of perjury, that the foregoing Rule 56(d) Affidavit is true and correct to the best of my knowledge, information, and belief.

Lawrence Justin Mills

10/31/2018
Date