IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LAWRENCE MILLS, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. GLR-18-562 |
| ANTHONY HASSAN, et al., | : | |
| Defendants. | : | |

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants Senior Trooper Anthony Hassan ("Sr. Tpr. Hassan"), Trooper First Class Matthew Dull ("Tpr. Dull"), Corporal James Lantz ("Cpl. Lantz") (collectively, the "Trooper Defendants"), State of Maryland (the "State"), and Maryland State Police's ("MSP") Motion to Dismiss Complaint or, in the Alternative, Motion for Summary Judgment (ECF No. 11) and Plaintiff Lawrence Mills' Cross Motion for Partial Summary Judgment (the "Cross-Motion") (ECF No. 23). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons set out below, the Court will grant Defendants' Motion and deny Mills' Cross-Motion as moot.

### I. BACKGROUND[1]

Just after midnight on March 13, 2015, Mills was driving south on Interstate 95, after spending the evening at the Horseshoe Casino in Baltimore, Maryland, when Sr.

---

[1] Unless otherwise noted, the Court takes the following facts from Mills' Complaint, (ECF No. 1), and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).

Tpr. Hassan pulled him over. (Compl. ¶¶ 18–19, ECF No. 1). According to Sr. Tpr. Hassan's Incident Report, Mills' car was swerving between lanes. (Defs.' Mot. Dismiss Compl. Altern. Summ. J. ["Defs.' Mot."] Ex. 2 ["Incident Report"] at 3, ECF No. 11-4). Hassan smelled alcohol on Mills' breath and observed his eyes were "glassy and bloodshot." (Id.). In response to Sr. Tpr. Hassan's questions, Mills denied having had "anything to drink," before conceding that he "had some juice." (Compl. ¶ 19; see Incident Report at 3). Mills stepped out of the car at Sr. Tpr. Hassan's request, but when Sr. Tpr. Hassan stated he was going to conduct field sobriety tests, Mills declined. (Compl. ¶¶ 19–21; Incident Report at 3). While checking Mills' Maryland driver's license, Sr. Tpr. Hassan noticed Mills had a restriction that required him to use an Ignition Interlock System ("Ignition Interlock") in his car. (Incident Report at 3).[2] When asked why there was no Ignition Interlock on his car's steering wheel, Mills said he had taken it out recently. (Id.). After stating he would "take [Mills] to jail," Sr. Tpr. Hassan searched Mills' vehicle. (Compl. ¶¶ 21–22). At that point, Tpr. Dull and Cpl. Lantz arrived at the scene. (Id. ¶ 22). Mills complained to them about Sr. Tpr. Hassan's search, but they declined to intervene. (Id. ¶ 23). Sr. Tpr. Hassan then searched Mills, placed Mills in his police cruiser, and drove him to MSP's Waterloo Barracks. (Id. ¶¶ 24–25; Incident Report at 5).

---

[2] Mills had the alcohol-related restriction on his license because he had been convicted of driving while impaired in 2010 and driving under the influence of alcohol in 2011. (See Defs.' Mot. Ex. 12 ["Court Records for Aug. 3, 2010 Stop"] at 1, ECF No. 11-14; id. Ex. 13 ["Court Records for July 20, 2011 Stop"] at 5, ECF No. 11-15). Those convicted of certain alcohol-related driving offenses must participate in the Ignition Interlock System Program, Md. Code Ann., Transp. § 16-404.1 (West 2019), and violating the Program is a criminal offense, id. § 16-113(k), (l).

At the Barracks, Sr. Tpr. Hassan read Mills the "DR-15 advise of rights" and asked him if he would submit to an Intoximeter breath test. (Compl. ¶ 25; Incident Report at 5). Mills requested to speak to an attorney, but Sr. Tpr. Hassan did not honor that request. (Compl. ¶ 25). Sr. Tpr. Hassan noted that Mills refused to take the breath test, (id.; Incident Report at 5), which resulted in the automatic suspension of Mills' driver's license, (Defs.' Mot. Ex. 4 ["DR-15 Form"], ECF No. 11-6); see Md. Code Ann., Transp. § 16-205.1(i) (West 2019). Sr. Tpr. Hassan charged Mills with Driving Under the Influence of Alcohol ("DUI"), (Compl. ¶ 26), as well as negligent driving, reckless driving, failure to obey properly placed traffic control device, driving or attempting to drive while impaired by alcohol ("DWI"), driving or attempting to drive a vehicle not equipped with an Ignition Interlock, and failure to obey designated lane directions, (Defs.' Mot. Ex. 6 ["Court Records for Mar. 13, 2015 Stop"] at 2–4, ECF No. 11-8). Sgt. Mitchell Nuzzo told Sr. Tpr. Hassan to let Mills speak with an attorney, and Sr. Tpr. Hassan allowed Mills call a friend to pick him up. (Compl. ¶¶ 26–27). Sgt. Nuzzo took Mills' mug shot and then informed Mills that his friend had arrived. (Id. ¶ 27). Mills walked to the lobby to meet his friend, received paperwork from Sr. Tpr. Hassan, and left. (Id.).

On June 30, 2015, Mills was tried in the District Court of Maryland in Howard County and convicted of all charges. (Court Records for Mar. 13, 2015 Stop at 2–4; Compl. ¶ 35).[3] The District Court sentenced him to two years and sixty days in prison,

---

[3] Defendants state in their Motion that the Howard County District Court convicted Mills of all charges. (Defs.' Mot. at 1, 14, 42). The Court records indicate that

with all but sixty days suspended; later that day, Mills posted bond and appealed. (Compl. ¶¶ 35–36); see State v. Lawrence Justin Mills, Nos. 2YW0B1R, 2YX0B1R, 2YZ0B1R, 2Z00B1R, 2Z10B1R, 2Y20B1R, (Dist.Ct.Md. filed Mar. 13, 2015), http://casesearch.courts.state.md.us/casesearch/. On December 15, 2015, a jury in the Circuit Court for Howard County convicted Mills of the driving without an interlock device charge, which had been severed from the others, and the Circuit Court sentenced Mills to one year in prison, with all but seventy-five days suspended. (Court Records for Mar. 13, 2015 Stop at 3–4). On February 18, 2016, another Circuit Court for Howard County jury heard the remaining charges against Mills. (Compl. ¶ 41; see Court Records for Mar. 13, 2015 Stop at 2–4, 10). Sr. Tpr. Hassan testified about the indications that Mills had been drinking, but the friend who came to pick Mills up from the MSP Barracks that night, Fernando Garcia, testified that Mills showed no signs of being drunk. (Compl. ¶¶ 41–42). The jury acquitted Mills of the reckless driving, failure to obey properly placed traffic control device, DUI, and DWI charges, but convicted him of the negligent driving and failure to obey lane directions charges, for which he was fined a total of $230.00. (Id. ¶ 43; Court Records for Mar. 13, 2015 Stop at 2–4).

Mills also requested a hearing regarding the suspension of his driver's license after he refused to take the alcohol breath test. (Compl. ¶ 39); see Md. Code Ann., Trans. § 16-205.1. On February 4, 2016, an administrative law judge ("ALJ") held a hearing at the Motor Vehicle Administration ("MVA") to determine whether Mills had refused to

---

Mills appealed from the Howard County District Court to the Circuit Court for Howard County, (Court Records for Mar. 13, 2015 Stop at 2–4), and Mills does not dispute that he was convicted of all charges in the Howard County District Court.

4

submit to an Intoximeter test on the night he was stopped and arrested. (Compl. ¶ 39; Defs.' Mot. Ex. 9 ["ALJ Decision"] at 1, ECF No. 11-11). Sr. Tpr. Hassan testified and was subjected to cross-examination by Mills' attorney. (Compl. ¶ 39). The ALJ found, by a preponderance of the evidence, that Hassan had "reasonable grounds to believe that [Mills] was driving or attempting to drive a motor vehicle while under the influence of or impaired by alcohol . . . ." (ALJ Decision at 2). The ALJ based his conclusion on Mills' alcohol-scented breath, glassy eyes, slurred speech, stumbling, and refusal to take field sobriety tests. (Id.). The ALJ concluded Mills violated § 16-205.1(f) and suspended his license for 120 days. (Id. at 3). The ALJ's Decision informed Mills of his right to appeal the administrative decision to the Circuit Court within thirty days. (Id.).

On February 23, 2018, Mills sued Defendants. (ECF No. 1). Mills' sixteen-count Complaint alleges: fabricated probable cause and unreasonable seizure in violation of the Fourth Amendment to the U.S. Constitution and false police report and perjury in violation of the Fourteenth Amendment (Count I)[4]; unlawful arrest and detention in violation of the Fourth and Fourteenth Amendments (Count III); unlawful search and seizure in violation of the Fourth Amendment (Count IV); wrongful conviction and deprivation of substantive due process in violation of Article 24 of the Maryland Declaration of Rights (Count V); unreasonable search and seizure in violation of Article 26 of the Maryland Declaration of Rights (Count VI); false arrest and false imprisonment (Count VII); malicious prosecution, perjury, and fraud (Count IX); battery, only as to Sr.

---

[4] On November 7, 2018, Mills voluntarily dismissed Counts II, VIII, and XIII of the Complaint. (See Pl.'s Not. Vol. Dismiss. Spec. Claims, ECF No. 22). Mills brings each count against all Defendants unless otherwise indicated.

5

Tpr. Hassan, MSP, and the State (Count X); negligence (Count XI); gross negligence (Count XII); negligent hiring, training, supervision, and retention, against MSP and the State (Count XIV); civil conspiracy (Count XV); and unlawful custom, pattern, or practice, against MSP and the State (Count XVI). (Compl. ¶¶ 79–205). Mills brings his federal claims under 42 U.S.C. § 1983 (2018). (Id. at 15, 17, 19, 20). He seeks monetary damages. (Id. at 17, 19–24, 26–28, 30–33, 35–36).

On May 17, 2018, Defendants filed their Motion to Dismiss Complaint or, in the Alternative, Motion for Summary Judgment. (ECF No. 11).[5] On November 7, 2018, Mills filed an Opposition, (ECF No. 24), and a Cross-Motion for Partial Summary Judgment (ECF No. 23). On November 21, 2018, Defendants filed a Reply. (ECF No. 26). On November 30, 2018, Mills filed a Reply. (ECF No. 27).

## II. DISCUSSION

### A. Defendants' Motion

#### 1. Conversion

Defendants style their Motion as motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d). See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md.

---

[5] On June 11, 2018, this Court granted Defendants' Motion as unopposed and closed the case. (ECF Nos. 12, 13). On June 12, 2018, Mills filed a Motion to Vacate Order of Dismissal. (ECF No. 14). On October 11, 2018, the Court granted Mills' unopposed Motion and re-opened the case. (ECF No. 15). On October 26, 2018, Mills' attorney filed a Motion to Strike Attorney's Appearance, (ECF No. 18), which the Court granted on October 31, 2019, (ECF No. 19). Mills has represented himself since then.

6

2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Charles Wright & Arthur Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004 & Supp. 2012)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment

7

'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., 55 F.3d 943, 953 (4th Cir. 1995)).

Here, Mills filed a Rule 56(d) affidavit, requesting various specific discovery, including depositions of MSP employees related to the case. (Pl.'s Resp. & Mem. L. Opp'n Defs.' Mot. Dismiss Altern. Summ J. at 44–48, ECF No. 24). As a result, the Court will not convert Defendants' Motion into one for summary judgment and will instead consider it under Rule 12(b)(6).

## 2. Standard of Review

The purpose of a motion under Rule 12(b)(6) is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of America, N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom. Goss v. Bank of America, NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266,

268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

The general rule is that a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion. See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011). But this general rule is subject to several exceptions. First, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Second, a court may consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md.2001); accord New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161, 1164 (4th Cir. 1994). Third, a Court may consider matters of public record. Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In the event that any of these properly considered extra-pleading materials conflict with the "bare allegations of the complaint," the extra-pleading materials "prevail." Fare Deals, 180 F.Supp.2d at 683; accord RaceRedi Motorsports, LLC v. Dart Mach., Ltd., 640 F.Supp.2d 660, 664 (D.Md.

2009). The Court will, therefore, consider the public records submitted by Mills and Defendants.

   3.   **Analysis**

In their Motion, Defendants argue that collateral estoppel and the U.S. Supreme Court's holding in <u>Heck v. Humphrey</u> bar Mills' claims.[6] Mills counters that each of Defendants' arguments does not apply to this case. The Court will analyze Mills' Complaint on a claim-by-claim basis, considering Defendants' arguments where relevant.

   a.   **Mills' Federal Claims**

In Counts I, III, and IV, Mills brings federal claims under the Fourth or Fourteenth Amendments. The Fourth Amendment claims relate to the alleged lack of probable cause for his arrest and are variously named false arrest, unlawful detention, and unlawful search and seizure. Mills' Fourteenth Amendment claims relate to alleged dishonesty—i.e., fabricated evidence, false police report, and perjury—and are essentially due process claims. The Court will first address the Fourth Amendment claims.

   i.   **Fourth Amendment Claims**

To plead a § 1983 claim "for false arrest in violation of the Fourth Amendment, [a plaintiff] must show that his arrest was made without probable cause." <u>Carter v. Durham</u>, No. WMN-14-2635, 2015 WL 641370, at *2 (D.Md. Feb. 12, 2015) (citing <u>Street v.</u>

---

[6] Defendants also argue that the Eleventh Amendment bars Mills' claims against the State, MSP, and Trooper Defendants in their official capacities; the State, MSP, and Trooper Defendants are not "persons" for the purposes of 42 U.S.C. § 1983; that Trooper Defendants are entitled to qualified immunity for Mills' federal claims and Maryland statutory immunity for Mills' state claims; and that Mills otherwise fails to state any of his claims. Because the Court concludes that Mills fails to state a claim based on Defendants' other arguments, the Court need not address these arguments.

Surdyka, 492 F.2d 368, 372–73 (4th Cir. 1974)). Similarly, "[t]o establish an unreasonable seizure under the Fourth Amendment, [a plaintiff] needs to show that the officers decided to arrest [him] for [the charged crime] without probable cause." Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002) (first citing Dunaway v. New York, 442 U.S. 200, 213 (1979); then citing Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996); and then citing United States v. Al–Talib, 55 F.3d 923, 931 (4th Cir. 1995)). "To prove an absence of probable cause, [a plaintiff] must allege a set of facts which made it unjustifiable for a reasonable officer to conclude that [the plaintiff] was violating" the law. Id. at 368.

Probable cause exists if the evidence before the law enforcement officer is "sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect [has] committed . . . an offense." Gray v. State, No. CCB-02-0385, 2004 WL 2191705, at *6 (D.Md. Sept. 24, 2004) (quoting Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998)). Whether there is probable cause depends on the totality of the circumstances. Gilliam v. Sealey, 932 F.3d 216, 234 (4th Cir. 2019) (quoting Smith v. Munday, 848 F.3d 248, 253 (4th Cir. 2017)). "While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." Id. (quoting Munday, 848 F.3d at 253). Whether probable cause to arrest exists is based only on the information the officer had at the time of the arrest. Id. (first citing Munday, 848 F.3d at 253; and then citing Graham v. Gagnon, 831 F.3d 176, 184 (4th Cir. 2016)).

"For [Fourth Amendment] purposes, an arrest on multiple charges is a 'single transaction,' and probable cause will be found to exist, so long as it existed for at least one offense." Wilkerson v. Hester, 114 F.Supp.2d 446, 456 (W.D.N.C. 2000) (quoting Barry v. Fowler, 902 F.2d 770, 773 n.5 (9th Cir. 1990)). Other circuits have held similarly. Id. (first citing Calusinski v. Kruger, 24 F.3d 931 (7th Cir. 1994) ("At the time of the arrest police officers need probable cause that a crime has been committed, not that the criminal defendant committed all of the crimes for which he or she is later charged."); and then citing Wells v. Bonner, 45 F.3d 90, 95 (5th Cir.1995) ("If there was probable cause for any of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails.")).

The doctrines of res judicata and collateral estoppel preclude relitigation of claims or issues, respectively, under certain circumstances. Allen v. McCurry, 449 U.S. 90, 94 (1980). The purpose of the doctrines is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Id. (citing Montana v. United States, 440 U.S. 147, 153 (1979)). "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." Gilliam v. Sealey, 932 F.3d 216, 231 (4th Cir. 2019) (quoting Allen, 449 U.S. at 96). As such, the doctrines of res judicata and collateral estoppel apply to § 1983 actions, and federal courts must afford preclusive effect to claims or issues decided by state courts when that state's courts would do the same. Id.

13

To establish collateral estoppel, or issue preclusion, each of these questions must be answered affirmatively: (1) "Was the issue decided in the prior adjudication identical with the one presented in the action in question?"; (2) "Was there a final judgment on the merits?"; (3) "Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?"; and (4) "Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?" Colandrea v. Wilde Lake Cmty. Ass'n, Inc., 761 A.2d 899, 909 (Md. 2000).

"Under Maryland law, a conviction determines conclusively the existence of probable cause, regardless of whether the judgment is later reversed in a subsequent proceeding." Ghazzaoui v. Anne Arundel Cty., 659 F.App'x 731, 733–34 (4th Cir. 2016) (quoting Asuncion v. City of Gaithersburg, No. 95–1159, 1996 WL 1842, at *2 (4th Cir. Jan. 3, 1996) (unpublished)). Maryland recognizes an exception to that rule, however, if "the conviction was obtained by fraud, perjury or other corrupt means." Ghazzaoui, 659 F.App'x at 734 (quoting Zablonsky v. Perkins, 187 A.2d 314, 316 (Md. 1963)).

Further, the Supreme Court held in Heck v. Humphrey that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under § 1983.

512 U.S. 477, 486–87 (1994).

Here, the state courts have established that Sr. Tpr. Hassan had probable cause to stop and arrest Mills, and therefore the Court gives that determination preclusive effect. Because Mills was convicted of negligent driving, failure to obey lane directions, and driving without an interlock device, probable cause for the stop and arrest has been conclusively determined. See Ghazzaoui, 659 F.App'x at 733. Mills alleges that he did not commit any traffic violations and that Hassan therefore did not have probable cause to stop him, citing the Zablonsky exception.[7] Mills cannot make such a § 1983 claim, however, because such a claim would necessarily be a challenge to the probable cause for Mills' arrest, which led to his convictions, three of which remain valid. See Heck, 512 U.S. at 486–87. One jury convicted Mills of negligent driving and failure to obey lane directions, and another jury convicted him of driving without his Ignition Interlock. To overcome Heck, Mills would have to plead that his convictions have been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. He does not, and cannot, allege those necessary facts.

Mills clarifies that he is attacking the DUI and DWI charges of which he was acquitted when he appealed the District Court convictions to the Circuit Court. But Sr. Tpr. Hassan only arrested Mills once, and that arrest, from which the several charges against him flowed, was a single transaction. See Wilkerson v. Hester, 114 F.Supp.2d at

---

[7] The Court notes that Mills offers no explanation for why his car was stopped among all the others traveling on the highway that night.

15

456. Because Sr. Tpr. Hassan had probable cause to arrest based on Mills' negligent driving, failure to obey lane directions, and driving without an interlock device, Mills' arrest was justified even if convictions stemming from the same arrest were later overturned. See Wells, 45 F.3d at 95. In other words, the DUI and DWI charges flowed from the same stop and arrest that were based on the same probable cause that Mills cannot attack in this lawsuit. Mills' "assertions that there was no probable cause for his arrest and that the evidence gathered against him was obtained illegally is a collateral attack on his convictions which may not be presented in the context of a claim for damages." Carter, 2015 WL 641370, at *3. To allow him to proceed on his Fourth Amendment claim under § 1983 based on fabricated probable cause would be to allow an impermissible collateral challenge to his convictions by two juries. As the Supreme Court held, a claim for damages that makes such a challenge "to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under § 1983." Heck, 512 U.S. at 487. As a result, Mills cannot challenge the probable cause for his arrest in this case and cannot "allege a set of facts which made it unjustifiable" for Sr. Tpr. Hassan to conclude that Mills had violated the law. Brown, 278 F.3d at 368. He therefore has not adequately pleaded his Fourth Amendment claims under § 1983.[8]

---

[8] In Count I of his Complaint, Mills appears to make a claim for bystander liability against Cpl. Lantz and Tpr. Dull. This claim fails. The Fourth Circuit has held that a law enforcement officer "may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall v. Prince George's Cty., 302 F.3d 188, 204 (4th Cir. 2002). According to the Complaint, Cpl. Lantz and Tpr. Dull's only involvement in the facts underlying this lawsuit was that they arrived at the side of the highway as Sr. Tpr. Hassan was in the process of arresting Mills.

For this reason, the Court will grant Defendants' Motion as to Mills' Fourth Amendment claims. The Court now turns to Mills' Fourteenth Amendment claims, which target what happened when the charges were brought to court. [9]

### ii. Fourteenth Amendment Claims

The Fourteenth Amendment protects "against deprivations of liberty accomplished without due process of law." Massey v. Ojaniit, 759 F.3d 343, 354 (4th Cir. 2014) (quoting Baker v. McCollan, 443 U.S. 137, 145 (1979)). The Fourth Circuit has recognized a due process "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity." Id. (quoting Washington v. Wilmore, 407 F.3d 274, 282 (4th Cir. 2005)). But "[f]abrication of evidence alone is insufficient to state a claim for a due process violation; a plaintiff must plead adequate facts to establish that the loss of liberty—i.e., his conviction and subsequent incarceration—resulted from the fabrication." Id. (citing Washington, 407 F.3d at 282–83).

Here, Mills has not pleaded facts that show his incarceration resulted from the alleged fabrication. Mills does not allege he served any period of incarceration for any

---

They could not have known Sr. Tpr. Hassan was violating Mills' constitutional rights both because they arrived mid-traffic stop, as Mills concedes, and because Mills' convictions support that Sr. Tpr. Hassan had probable cause. As a result, the Court will grant Defendants' Motion as to the claims Mills makes against Cpl. Lantz and Tpr. Dull.

[9] Mills' Fourteenth Amendment arguments and claims do not apply to the arrest. Taylor v. Waters, 81 F.3d 429, 435–36 (4th Cir. 1996) (noting that the Fourth Amendment provides all of the pretrial process that is constitutionally due to a criminal defendant).

charge other than the Ignition Interlock violation. He states that after the District Court initially sentenced him, the judge set a bond amount, and Mills was released on bond, which the state court records confirm. The only charge to which Mills was sentenced to incarceration and did not successfully appeal was the Ignition Interlock charge. But Mills has not alleged that Sr. Tpr. Hassan fabricated this charge or that his Ignition Interlock System was in place as required. Though Mills alleges Sr. Tpr. Hassan's perjury in detail through various trials and hearings, Mills does not even mention the Ignition Interlock charge in the Complaint. Accordingly, the Court concludes Mills has not adequately pleaded that Sr. Tpr. Hassan's alleged fabrication caused his incarceration. See Massey, 759 F.3d at 354. As a result, the Court will grant Defendants' Motion as to Mills' Fourteenth Amendment claims.

### b. Mills' State Claims

The remaining counts, Counts V–VII, IX–XII, and XIV–XVI, are all state law claims. The Court must, therefore, determine whether it is appropriate to retain jurisdiction over them.

"[F]ederal courts are courts of limited jurisdiction." Home Buyers Warranty Corp. v. Hanna, 750 F.3d 427, 432 (4th Cir. 2014) (quoting Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994)). "There are three principal bases for subject-matter jurisdiction in federal court: (1) federal-question jurisdiction; (2) diversity jurisdiction; (3) and supplemental jurisdiction." Costley v. City of Westminster, No. GLR-16-1447, 2017 WL 5635463, at *1 (D.Md. Jan. 26, 2017); see also Exxon Mobil

Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). Federal district courts have federal question jurisdiction over civil actions that arise under federal law. 28 U.S.C. § 1331 (2018). The Court has original jurisdiction over this case through federal question jurisdiction.

Because the Court has dismissed the § 1983 claims over which it had original jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(c)(3) (2018) (providing that "district courts may decline to exercise supplemental jurisdiction over a state claim if . . . the district court has dismissed all claims over which it has original jurisdiction"). Accordingly, the Court will dismiss Counts V–VII, IX–XII, and XIV–XVI.

**B.     Mills' Cross-Motion**

Because the Court has dismissed Mills' Complaint, the Court will deny Mills' Cross-Motion as moot.

### III.     CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss Complaint or, in the Alternative, Motion for Summary Judgment (ECF No. 11), construed as a motion to dismiss, and deny as moot Mills' Cross Motion for Partial Summary Judgment (ECF No. 23). A separate Order follows.

Entered this 30th day of September, 2019.

/s/
_____
George L. Russell, III
United States District Judge